OPINION
{¶ 1} Plaintiff, Ben C. Stone, appeals from a decree of divorce terminating his marriage to Defendant, Larisa P. Stone. Ben[1] and Larisa were married on June 29, 1999. Larisa is a citizen of Ukraine who arrived in the United States on April 25, 1999, on a fiancee visa sponsored by Ben. The couple has one child, Sophia Jean Stone, who was born on May 24, 2000.
 {¶ 2} On October 17, 2001, Ben filed a complaint for divorce. A trial was held, and on June 4, 2003, the trial court entered a judgment entry and final decree of divorce. Ben filed a timely notice of appeal.
FIRST ASSIGNMENT OF ERROR
 {¶ 3} "The decision of the trial court awarding the appellee an equity interest in the marital home was contrary to the evidence in the record and in conflict with section 3105.171 of the ohio revised code."
 {¶ 4} The trial court found that Ben and Larisa each had a $12,750 equity interest in the marital residence. The trial court arrived at figure through a calculation based on evidence of the current value of the marital residence ($113,500), the down payment for purchase of the property that Ben had made from separate property he acquired prior to the marriage ($13,000), and the current mortgage loan balance due on the property ($75,000). In its calculation, the trial court started with the value of the property and then subtracted from it the amount Ben had contributed to the down payment and the current mortgage on the property, arriving at $25,500 ($113,500 — $13,000 — $75,000 = $25,500). The $25,500 was then divided equally between the two parties, and each was awarded a $12,500 equity interest in the property.
 {¶ 5} Ben argues that the trial court "incorrectly determined the amount of the mortgage that existed, and incorrectly determined that $25,500 of marital equity existed." Ben fails to elaborate on this claim. He only offers the assertion that the trial court's determination is "contrary to the record." After reviewing the record, we see no error in the trial court's calculation. Accordingly, this argument fails.
 {¶ 6} The trial court awarded Ben the marital residence. Larisa was awarded the right to reside in the marital residence for eighteen months following the final decree of divorce, applied as an offset against her equity in the property, which Ben would otherwise be required to pay her.
 {¶ 7} Ben testified that he had withdrawn his sponsorship of Larisa's plea for American citizenship. The court reasoned that because Larisa is an immigrant who no longer had the sponsorship required to obtain a green card, the process of obtaining a green card had been significantly delayed. The trial court found that until Larisa obtained her green card she would be unable to work and her attempts to secure suitable housing would be hampered. During the eighteen months Larisa remains in the residence, Ben is required to pay the monthly mortgage obligation.
 {¶ 8} Ben argues that the trial court's decision to award Larisa and Sophia a right to remain in the marital residence for eighteen months was improper.
 {¶ 9} R.C. 3105.171(J)(1) states that a court may "issue any orders under this section that it determines equitable, including, but not limited to, . . . [a]n order granting a spouse the right to use the marital dwelling or any other marital property or separate property for any reasonable period of time." We find the trial court's rationale for permitting Larisa and Sophia to remain in the marital residence as justifiable to achieve equity between the couple and to prevent an impracticable outcome. Otherwise, Larisa would have to find a new place to live and a job without yet having her green card, which Ben's own actions have made more complex. Allowing Larisa to apply her equity in the property in this way is likewise a form of distribution of marital property consistent with the provisions of R.C. 3105.171(E)(1) and (2).
 {¶ 10} The first assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR
 {¶ 11} "The award of spousal support to appellee is unreasonable and inconsistent with the evidence in the record."
 {¶ 12} Ben testified that over the three prior years his taxable annual income has averaged approximately $30,000, or $2,500 per month. Larisa's annual income is approximately $7,200. The trial court ordered Ben to pay $359.40 a month, or $4,312.80 per year, as child support for Sophia. He was also ordered to pay $850 a month as spousal support for the eighteen months immediately following the March 26, 2003 divorce decree. These obligations were in addition to the $294 a month, $3,528 annual, child support obligation Ben owed for children born of his first marriage.
 {¶ 13} In addition to the child support and spousal support obligations discussed above, the trial court ordered Ben to pay the mortgage on the marital residence for the eighteen months following the March 26, 2003 decree of divorce. The mortgage payments on the marital residence appear to be somewhere between $650 a month and $900 a month.
 {¶ 14} Ben argues that the spousal support order requiring him to pay Larisa $850 per month for the eighteen months following the decree is unreasonable in relation to his $30,000 per year income and all of his other court imposed obligations. He argues that his child support obligations and his spousal support obligation, when added to the mortgage payments, leave him with significantly less income than even a minimum wage would provide him. Therefore, he argues, the spousal support awarded by the trial court is unreasonable.
 {¶ 15} The abuse of discretion standard is used when reviewing a trial court's decision to award child support. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 16} R.C. 3105.18(C)(1) lists the factors a court must consider when determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support. The factors are:
 {¶ 17} "(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
 {¶ 18} "(b) The relative earning abilities of the parties;
 {¶ 19} "(c) The ages and the physical, mental, and emotional conditions of the parties;
 {¶ 20} "(d) The retirement benefits of the parties;
 {¶ 21} "(e) The duration of the marriage;
 {¶ 22} "(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 {¶ 23} "(g) The standard of living of the parties established during the marriage;
 {¶ 24} "(h) The relative extent of education of the parties;
 {¶ 25} "(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 {¶ 26} "(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;" (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 {¶ 27} "(l) The tax consequences, for each party, of an award of spousal support;
 {¶ 28} "(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 {¶ 29} "(n) Any other factor that the court expressly finds to be relevant and equitable." R.C. 3105.18(C)(1).
 {¶ 30} In the decree of divorce the trial court considered several of the R.C. 3105.18(C)(1) factors. It stated:
 {¶ 31} "Pursuant to R.C. 3105.18(C)(1) the parties' incomes have been considered; the Plaintiff has a much higher earning capacity than the defendant; the marriage is short in duration; it would be inappropriate for the Defendant to seek full time employment outside the home due to the child's tender age; the Defendant may need time to acquire additional education, training, or job experience before finding employment that pays a living wage; the Defendant has lost income due to her relocation to the United States and her marital duties; the Defendant is not a citizen of this country and will have difficulty finding suitable employment. In addition, Plaintiff testified he signed a document stating that he would reimburse the government if the Defendant applied for public assistance. Without the award of spousal support, the Defendant's income will be within poverty guidelines and this is not in the best interest of the child."
 {¶ 32} While the trial court's rationale for awarding Larisa $850 per month in spousal support is persuasive, the court failed to take into account the other payments Ben was required to make when it determined the spousal support obligation. R.C.3105.18(C)(1)(i) states that the court should consider "the relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties."
 {¶ 33} Ben's monthly court-ordered child support obligations total $653.40 ($359.40 + $294). Ben's spousal support obligation for the first eighteen months following the decree is $850 per month. Even using the most conservative mortgage figure, Ben has a $650 monthly mortgage obligation for the eighteen months following the court decree. Adding up these figures, Ben's court ordered monthly obligations during the first eighteen months following the divorce decree consume $2,153.40, or 86%, of his $2,500 monthly gross income. And, this does not take account of the $6,480 in legal fees that Larisa incurred which Ben is also ordered to pay.
 {¶ 34} While Ben's obligation to pay spousal support and the mortgage on the marital residence he must maintain for Larisa's use end after eighteen months, during that eighteen months Ben's obligations are excessive in relation to his $30,000 annual income, consuming approximately 86% of it, prior to taxes. We find that the trial court abused its discretion in calculating the amount of spousal support that should have been awarded.
 {¶ 35} The second assignment of error is sustained.
THIRD ASSIGNMENT OF ERROR
 {¶ 36} "The award of attorneys fees granted to appellee by separate order in unreasonable and inconsistent with the findings of fact contained in the final judgment and decree of divorce."
 {¶ 37} R.C. 3105.18(H) provides that the court may award reasonable attorney's fees "if it determines that the other party has the ability to pay the attorney's fees that the court awards. When the court determines whether to award reasonable attorney's fees to any party pursuant to this division, it shall determine whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if it does not award reasonable attorney's fees." R.C.3105.18(H).
 {¶ 38} On April 29, 2003, the trial court held a hearing to determine whether Larisa should be awarded attorney's fees. The trial court heard testimony regarding the complexity of the case due to immigration issues. It also heard testimony regarding the reasonableness of the attorney's fees Larisa incurred. The trial court determined that because Larisa has no family in the country and no job, she is entitled to an award of attorney's fees related to the divorce. The trial court concluded that the attorney's fees Larisa incurred were necessary to protect her property rights. It found that the $6,480 in attorneys fees that Larisa incurred were necessary and reasonable. Accordingly it ordered Ben to pay the fees. Ben suggests that some of the fee obligation he was ordered to pay were for legal representation on immigration issues, not divorce matters. However, he fails to substantiate the claim with reference to the record.
 {¶ 39} At the time of their divorce Ben earned approximately $30,000 annually, while Larisa earned only about $7,200 annually. Further, Larisa's prospects for increasing her income was severely limited by her inability to quickly obtain her green card. Thus, the record demonstrates that Ben had the ability to pay Larisa's attorney's fees. Additionally, the record demonstrates that Larisa's attorney's fees were reasonable, and that without having incurred an obligation for the fees Larisa would have been prevented from protecting her interests. Therefore, we cannot find that the trial court abused its discretion.
 {¶ 40} The third assignment of error is overruled.
FOURTH ASSIGNMENT OF ERROR
 {¶ 41} "The decision of the trial court regarding the medical expenses and the division of miscellaneous property in incomplete and inconsistent with the evidence in the record."
 {¶ 42} Ben argues that the final decree of divorce contains three clerical errors.
 {¶ 43} The first alleged error appears in the Extraordinary Medical Expenses section of the decree, which states: "Since there is no medical insurance available at this time, the extraordinary will be divided with the Plaintiff paying the first One Hundred Dollars ($100) and the remaining balance is to be paid pursuant to line 16 of the." The section stops there and provides no further information. We find this mistake to be clerical in nature and therefore, best corrected through a Civ. R. 60(A) motion in the trial court.
 {¶ 44} In the second alleged error, the trial court inadvertently identified the automobile that Larisa was awarded as a 1989 BMW, when it was actually a 1992 Chevy Corsica. Because the parties never actually owned a BMW, it appears that this mistake was also clerical in nature. As such, it can best be corrected through a Civ. R. 60(A) motion.
 {¶ 45} The third alleged error relates to the filing of tax returns. The trial court ordered the parties to file their tax return for income earned in the year 2001 jointly. Ben argues that this was improper because both parties are self employed and can more accurately separately account for their income and expenses. He also argues that the trial court failed to address how their taxes should be filed for the 2002 tax year.
 {¶ 46} We cannot find that the trial court abused its discretion in ordering Ben and Larisa to file their 2001 tax return jointly. Further, we find no error in the trial court's failure to address how the couple should file their 2002 tax return, when their decree of divorce was effective in 2001.
 {¶ 47} The fourth assignment of error is overruled.
 {¶ 48} Having sustained the second assignment of error, we will reverse the judgment from which this appeal was taken, in part, and we will remand for further proceedings on the issue of spousal support. Otherwise, the judgment is affirmed.
Brogan, J. and Young, J., concur.
[1] For clarity and convenience, the parties are identified bytheir first names.