OPINION
{¶ 1} This is an appeal and cross-appeal from the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, granting a divorce to the *Page 2 
parties, defendant-appellant/cross-appellee, John A. Heller ("defendant"), and plaintiff-appellee/cross-appellant, Susan M. Heller ("plaintiff").
 {¶ 2} The pertinent facts are undisputed. Plaintiff and defendant were married on June 29, 1974, and two children were born as issue of the marriage, both of whom were emancipated at the commencement of these proceedings. On September 27, 2004, plaintiff initiated the within action for divorce, and, on October 28, 2004, defendant filed a counterclaim for divorce. One of the marital assets is defendant's 39.5 percent interest in a Subchapter S corporation known as HS Forest Products, Inc. ("HS"). Defendant also works at HS and draws a salary.
 {¶ 3} Among the issues presented to the court for decision were: division of marital assets, whether certain assets were marital or separate property, attorney fees, alleged financial misconduct, and spousal support. The matter came before the court for trial over a period of several days between April 16, 2007, and June 25, 2007. On September 24, 2007, the trial court issued its decision and, thereafter, a Judgment Entry — Decree of Divorce in accordance therewith. Defendant appealed and plaintiff cross-appealed.
 {¶ 4} In his appeal, defendant raises the following assignments of error for our review:
 FIRST ASSIGNMENT OF ERROR
 The Trial Court abused its discretion by failing to distribute the parties' marital property in a matter [sic] consistent with [R.C.] 3105.171 by awarding the Appellee-Cross Appellant twenty percent of the Appellant's future ownership distributions from HS Forest Products, Inc. *Page 3 
 SECOND ASSIGNMENT OF ERROR
 The spousal support portion of the Trial Court's Judgment Entry Decree of Divorce filed September 24, 2007 ordering the payment of spousal support is vague and unenforceable.
 {¶ 5} In her cross-appeal, plaintiff advances the following assignments of error:
 ASSIGNMENT OF ERROR NO. 1
 IT WAS REVERSIBLE ERROR AND AN ABUSE OF DISCRETION FOR THE TRIAL COURT TO FAIL TO DIVIDE UN-ACCOUNTED FOR SUMS AS A MARITAL ASSET.
 ASSIGNMENT OF ERROR NO. 2
 IT WAS REVERSIBLE ERROR AND AN ABUSE OF DISCRETION FOR THE TRIAL COURT TO FAIL TO INCLUDE THE MARITAL SUMS SPENT BY APPELLANT ON LEGAL AND EXPERT WITNESS FEES AS A MARITAL ASSET SUBJECT TO DIVISION.
 ASSIGNMENT OF ERROR NO. 3
 IT WAS REVERSIBLE ERROR AND AN ABUSE OF DISCRETION FOR THE TRIAL COURT TO FAIL TO REQUIRE APPELLANT TO PROVIDE A REGULAR ACCOUNTING TO APPELLEE OF ANY AND ALL BONUS/SHAREHOLDER DISTRIBUTIONS THAT HE RECEIVES WHERE HE MUST PROVIDE A PERCENTAGE OF SAME TO APPELLEE.
 {¶ 6} We begin with defendant's appeal. In his first assignment of error, defendant maintains that the trial court impermissibly "double dipped" by distributing his interest in HS's future profits twice — first when it divided the marital property by awarding plaintiff assets valued at an amount equal to one-half the present value of defendant's share in the company (after present value had been determined by capitalizing future earnings), and again when it ordered payment to plaintiff of a percentage of defendant's future shareholder distributions, upon his receipt of same, as *Page 4 
part of its award of spousal support. In other words, defendant argues that the court abused its discretion in reducing the future profits of a marital asset to present value and dividing that value equally between the parties, and then re-awarding part of defendant's half of that asset to plaintiff by ordering payment of a percentage of those profits once they are actually realized.
 {¶ 7} The statute governing equitable division of marital property in an action for divorce is R.C. 3105.171. That statute provides, in pertinent part:
 (C)(1) Except as provided in this division or division (E) of this section, the division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable. In making a division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of this section.
 (2) Each spouse shall be considered to have contributed equally to the production and acquisition of marital property.
 (3) The court shall provide for an equitable division of marital property under this section prior to making any award of spousal support to either spouse under section 3105.18 of the Revised Code and without regard to any spousal support so awarded.
 * * *
 (F) In making a division of marital property and in determining whether to make and the amount of any distributive award under this section, the court shall consider all of the following factors:
 (1) The duration of the marriage;
 (2) The assets and liabilities of the spouses; *Page 5 
 (3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;
 (4) The liquidity of the property to be distributed;
 (5) The economic desirability of retaining intact an asset or an interest in an asset;
 (6) The tax consequences of the property division upon the respective awards to be made to each spouse;
 (7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;
 (8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;
 (9) Any other factor that the court expressly finds to be relevant and equitable.
 {¶ 8} In the case of Hamad v. Hamad, Franklin App. No. 06AP-516,2007-Ohio-2239, this court explained the standard of review of a trial court's division of property under R.C. 3105.171:
 A domestic relations court enjoys broad discretion in fashioning a division of marital property, and its decision will not be reversed absent an abuse of that discretion. The term "abuse of discretion" connotes more than an error of law or judgment; rather, it implies that the court's attitude was unreasonable, arbitrary or capricious. A reviewing court may not substitute its judgment for that of the trial court unless, considering the totality of the circumstances, the trial court abused its discretion. A court should not review discrete aspects of a property division out of the context of the entire award. Rather, a court should consider whether the trial court's disposition of marital property as a whole resulted in a property division which was an abuse of discretion.
(Citations omitted.) Id. at ¶ 54.
 {¶ 9} The statute governing spousal support provides, in pertinent part: *Page 6 
 (B) In divorce and legal separation proceedings, upon the request of either party and after the court determines the division or disbursement of property under section 3105.171 [3105.17.1] of the Revised Code, the court of common pleas may award reasonable spousal support to either party. During the pendency of any divorce, or legal separation proceeding, the court may award reasonable temporary spousal support to either party.
 An award of spousal support may be allowed in real or personal property, or both, or by decreeing a sum of money, payable either in gross or by installments, from future income or otherwise, as the court considers equitable.
 Any award of spousal support made under this section shall terminate upon the death of either party, unless the order containing the award expressly provides otherwise.
 (C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
 (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 [3105.17.1] of the Revised Code;
 (b) The relative earning abilities of the parties;
 (c) The ages and the physical, mental, and emotional conditions of the parties;
 (d) The retirement benefits of the parties;
 (e) The duration of the marriage;
 (f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 (g) The standard of living of the parties established during the marriage; *Page 7 
 (h) The relative extent of education of the parties;
 (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties; (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 (l) The tax consequences, for each party, of an award of spousal support;
 (m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 (n) Any other factor that the court expressly finds to be relevant and equitable.
R.C. 3105.18(B) and (C)(1). "Appellate review of an award of spousal support is whether the trial court abused its discretion." Dunham v.Dunham, 171 Ohio App.3d 147, 2007-Ohio-1167, 870 N.E.2d 168, ¶ 75, citing Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 5 OBR 481,450 N.E.2d 1140.
 {¶ 10} At trial, each party presented his or her own expert testimony regarding the value of defendant's ownership interest in HS. Both experts valued the interest using the "income" method or, more precisely, the "capitalization of earnings" method. They arrived at differing conclusions primarily due to the fact that plaintiff's expert forecasted future earnings by looking back at three years of HS's earnings, while defendant's expert looked back five years. In its decision, the trial court found defendant's expert's testimony more persuasive, and the court adopted defendant's expert's conclusion that, *Page 8 
as of December 31, 2005, defendant's interest in HS had a value of $700,018. The court awarded all of defendant's shares in HS to defendant, and achieved an equal division of marital property by awarding plaintiff other marital assets totaling $350,000 in value.
 {¶ 11} With respect to spousal support, the court discussed the evidence relevant to the statutory factors it was required to consider, and then went on to determine the issue as follows:
 Defendant's income consists of a normalized commission/salary base of $300,000.00, a leased BMW at $1,000.00 monthly, and dividend income. Defendant receives additional gross income in the form of bonus/shareholder distribution of income that has been traditionally included in his W-2 statements. Defendant's W-2 income for the past five years is $861,832.00 for 2006, $872,434.00 for 2005, $562,005.00 for 2004, $419,920.00 for 2003 and [$]356,339.00 for 2002. The five year average of his income is $614,506.00.
 * * *
 The court finds that defendant's earning capacity solely from employment is $300,000.00 annually, the "normalized" income assigned by both accountants. Defendant receives significant additional income over and above this earning capacity due to his ownership interest in the company, as reflected in his W-2 income.
 * * *
 In consideration of the statutory factors under R.C. § 3109.18, and the division of property awarded herein, the court finds that an indefinite award of spousal support in the amount of $8,000.00 per month is reasonable and appropriate. In addition to this monthly spousal support, defendant shall pay to plaintiff as additional spousal support twenty [percent] (20%) of each payment of additional gross (pretax) income paid to defendant by HS Forest Products that has been characterized in this trial as "bonus" income within thirty (30) *Page 9 
days of his receipt of said payment, plus the payment of plaintiff's monthly health insurance coverage as outlined below. This court shall retain jurisdiction to modify the award, both as to term and amount. Plaintiff's retirement shall appropriately constitute a substantial change in circumstances for purposes of a future modification in spousal support.
(Citation omitted.) (Sept. 24, 2007 Judgment Entry Decree of Divorce, at 14-16.)
 {¶ 12} Defendant argues that the court abused its discretion in basing additional spousal support on defendant's income, inclusive of his share of future profits, when those profits had already been accounted for in valuing a marital asset (defendant's interest in the company) and had already been equally divided between the parties. Essentially, defendant posits that once the future profits have been divided pursuant to R.C. 3105.171, one party's share cannot then be treated as "income" for purposes of awarding spousal support. Defendant argues that in doing so, the trial court in this case violated R.C. 3105.171(C)(1) because it failed to make the division of marital property "equal" or make specific findings of fact to support an unequal division of marital property; and it violated R.C. 3105.171(C)(3) because it failed to make an equitable division of marital property "without regard to any spousal support so awarded."
 {¶ 13} Defendant does not cite, and our research does not reveal, any Ohio case passing upon this issue. However, plaintiff directs our attention to two cases in which, she argues, courts have rejected a "double dipping" argument. The first of these cases is Bagnola v.Bagnola, Stark App. No. 2003-CA-00120, 2003-Ohio-5916. InBagnola, the husband argued that the trial court erred in basing its property division on business valuations based on the husband's "earned income" from these businesses, and also based an award of spousal support on the "same earned income." Id. at ¶ 8. The court of *Page 10 
appeals rather summarily rejected this argument, noting that both parties produced expert testimony on these issues and that "[a]ppellant's earned income from the three business ventures is inextricably tied to the valuations of each company and is necessarily a basis for determination of spousal support." Id. at ¶ 68. The court then concluded that the trial court has wide latitude to accept those portions of the experts' reports that it deems credible. It is unclear from the opinion in Bagnola precisely which of the available methods of business valuation were used in that case, or what type of entities were involved, and whether the value of those businesses was actually divided between the parties to that case. Accordingly, this case is of little value in resolving the issue before us.
 {¶ 14} The second case that plaintiff cites is Briskey v. Briskey
(1998), Cuyahoga App. No. 73368. In that case, the court rejected the wife's argument that the trial court erred in dividing her State Teachers Retirement System pension as part of the equitable division of marital assets, and also counting her pension payments in determining spousal support. That case is not germane to our inquiry for two reasons. First, Briskey dealt with a defined benefit pension plan; it did not involve a profit-making entity. Second, one of the bases for the court's decision in Briskey was the fact that R.C. 3105.18 specifically requires consideration of the parties' retirement benefits in determining the appropriate amount of spousal support. There is no such provision relating to shareholder distributions.
 {¶ 15} The novel question presented in the instant case is whether the trial court abused its discretion in drawing twice from the same well — defendant's share of HS's *Page 11 
future profits — in dividing marital assets and in ordering spousal support. For the following reasons, we hold that this was an abuse of discretion.
 {¶ 16} "It is basic valuation theory that the value of a business is equal to the present worth of the future benefits of ownership." (Emphasis sic.) Rivers, The "double-dipping" concept in businessvaluation for divorce purposes (2006), Massachusetts Bar Assoc.[1] The "income method" or "capitalization of earnings method" is the most widely used method to compute the value of a business.[2] "[T]his method relies on the discounted cash flow (DCF) model. Earnings projections, extrapolated from the company's accounting statements, are discounted using a capitalization rate (or multiplier) that takes into account the buyer's required risk-based rate of return and a factor for future growth." Id. "The concept of the time value of money is at the core of the income valuation approach. Namely, the income streams or cash flows the buyer of the business anticipates he or she will receive in the future can be translated into their present worth * * *"[3]
 {¶ 17} Defendant's expert, Tim McDaniel ("McDaniel"), testified that he utilized the "income method," or "capitalization of earnings method" in determining the value of HS. This approach was superior to the asset approach because HS has no fixed assets, and it was superior to the market approach because HS is a broker and not a manufacturer. (Tr. Vol. V at 991.) McDaniel explained that 98.2 percent of the value of HS consists in *Page 12 
receivables, and the company's value is made up entirely of "blue sky intangible assets." Id. at 987. He further explained that defendant's income from HS consists of dividends, which are the return on his investment and arise from his ownership interest; and commissions, which are like salary and arise from his management of his book of business. Id. at 997-998.
 {¶ 18} McDaniel explained that with the income approach to valuation, the property to be appraised is viewed primarily from the standpoint of its investment characteristics (as opposed to physical or operational characteristics). The key inquiry is the expectation of the future benefit stream. Thus, one takes the expected future benefit stream (earnings or cash flow) and discounts that to its present value. The projected future earnings are normalized, then multiplied by a "capitalization rate" to determine present value. In order to accomplish this, McDaniel began with the earnings projections at which he arrived by analyzing past earnings data. He added all of the owners' return on investment, or dividends, to obtain the "normalized income," which is what a prospective buyer can expect as a return on his investment, but left out (or deducted) the amount paid to defendant and the other shareholders that is compensation related to their own day-to-day labor managing their book of business. This is because a potential investor would have to pay these salaries, so they are not counted as part of the "normalized income" or the return on the buyer's investment. McDaniel then multiplied the normalized income by an established discount rate, then further discounted the value of defendant's shares because he owns a non-marketable minority interest, and arrived at a total value of $700,018. (Defendant Exhibit "1," Rea Assocs. Report, at 23.) *Page 13 
 {¶ 19} It is clear from McDaniel's testimony and report, and apparently undisputed by the parties, that the value that the trial court assigned to defendant's interest in HS represented the discounted present value of the future earnings (or stock dividends) of the company, but did not include any future annual salary that defendant would earn from the company. In other words, for purposes of valuation of this marital asset, the concepts of defendant's salary and ownership profits were appropriately kept separate. However, the trial court combined them in awarding spousal support. The question for us is whether, given that defendant's interest in the future earnings of HS was reduced to its present value and divided as a marital asset, was it an abuse of discretion for the trial court to award plaintiff 20 percent of those dividends to be paid to her when the profits are actually realized and distributed to defendant.
 {¶ 20} "The `double-dip' refers to the double counting of a marital asset, once in the property division and again in the [spousal support] award. More specifically, where a court uses a business owner's `excess earnings' to value the interest in the business and also fixes support on that spouse's total income (inclusive of the `excess earnings' used to value the business), a `double-dip' occurs." Vuotto, DoubleTrouble (2004), found at http://www.vuotto.com/new-jersey-divorce-articles/double-trouble.htm (last visited June 25, 2008). "[U]tilizing the same stream of income that forms the basis of valuing a business when calculating [spousal support] provides the non-owning spouse with the benefit from the same stream of income twice." Id.
 {¶ 21} In Ohio, R.C. 3105.171(C)(3) requires that the court provide for an equitable division of marital property "prior to making any award of spousal support * * * and without regard to any spousal support so awarded." Moreover, R.C. 3105.18(A) provides that *Page 14 
"`[s]pousal support' does not include any payment made to a spouse * * * that is made as part of a division or distribution of property * * * under [R.C.] 3105.171." Based upon these provisions, we discern a statutory mandate to keep marital property division and spousal support separate, and to consider the potential "double dip" when ruling upon these issues in cases where one spouse's ownership interest in a going concern is discounted to present value and divided, and where excess earnings arising from that ownership interest will constitute part of that spouse's stream of income into the future.
 {¶ 22} In this case, the evidence clearly indicates that the value assigned to defendant's interest in HS did not include defendant's compensation for his daily labor, but did include his share of all of HS's future excess earnings; that is, it included the present value of all of defendant's future stock dividends. In making its property division, the trial court divided this asset equally between the parties. But the trial court then awarded to plaintiff, in addition to her one-half of that asset, another 20 percent of defendant's half.
 {¶ 23} Plaintiff receives her share of the total value of the business immediately by a tax-free offsetting assignment of other, presently liquid assets, while defendant cannot immediately reap the benefit of HS's future excess earnings, and will be required to pay 20 percent of his share of the value once he receives it, even though plaintiff will have already received her share of this value. In ordering this result, the court "double dipped," or awarded part of the same asset to plaintiff twice. This resulted in an unequal property division, not in accordance with R.C. 3105.171. Trial courts may treat a spouse's future business profits either as a marital asset subject to division, or as a stream of income for spousal support purposes, but not both. When the trial court in this case treated *Page 15 
defendant's share of HS's expected future profits as both an asset and as income for spousal support purposes, this constituted an abuse of discretion.
 {¶ 24} For this reason, defendant's first assignment of error is sustained.
 {¶ 25} Our disposition of defendant's first assignment of error renders moot his second assignment of error, and we overrule defendant's second assignment of error on that basis.
 {¶ 26} We now turn to plaintiff's cross-appeal. In her first cross-assignment of error, she maintains that the trial court erred in finding that defendant did not commit financial misconduct in spending discretionary monies during the pendency of the divorce proceedings, and that the court should have awarded plaintiff one-half of monies she claims are "unaccounted for."
 {¶ 27} Financial misconduct arises where one spouse engages in knowing wrongdoing, including dissipation, destruction, concealment or fraudulent disposition of marital assets. Mantle v. Sterry, Franklin App. No. 02AP-286, 2003-Ohio-6058, ¶ 31. "Typically, the offending spouse will either profit from the misconduct or intentionally defeat the other spouse's distribution of marital assets." Id. at ¶ 32. "The burden of proof of financial misconduct is on the complaining spouse." Id. at ¶ 31. "The trial court has discretion in deciding whether a spouse committed financial misconduct, subject to a review of whether its determination was against the manifest weight of the evidence." Id.
 {¶ 28} In its decision and judgment entry, the trial court found that plaintiff had "invested substantial time and funds to demonstrate that defendant engaged in financial misconduct and/or secreted funds during the pendency of this case." The court noted that plaintiff's retained accounting expert "[b]ased upon his preliminary evaluation of [the *Page 16 
parties' financial records for 2001 through 2006] * * * was unable to account for certain transactions and funds totaling $811,850." (Judgment Entry Decree of Divorce, at 8-9.) However, the court found:
 During his case in chief, defendant was able to provide a full explanation for all but $57,793.00 of the questioned transactions and provided supplemental documentation for these questioned transactions. Further support for his explanation was elicited during the testimony of defendant's expert, John Waybright, and defendant's exhibits * * * The genesis of the remaining "unexplained" $57,793.00 in funds began in 2004 when defendant began to keep more cash from his pay deposits, between $1,500.00 to $2,000.00 monthly and using his credit cards less. He testified that he simply desired a bit more privacy from plaintiff's scrutiny of his spending. * * * He further testified that he gave a substantial sum of this cash, about $18,000.00 to their children while they remained in college or were unemployed; that $6,000.00 went to plaintiff and the remaining $33,793.00 was spent for defendant's personal use by him over the past three years of pending litigation, about $937.00 in cash monthly. This cash activity is not inconsistent with his pre-divorce history of personal cash withdrawals and use. Further, during the pendency of the divorce, the marital assets actually increased in value * * * There is no evidence of any financial misconduct or secretion of assets by defendant.
(Footnotes omitted.) Id. at 9.
 {¶ 29} In support of her first assignment of error, plaintiff acknowledges that defendant provided testimony and documents as detailed above, but argues that there remained "serious issues" leaving $66,970 unaccounted for during the years 2005 and 2006. She argues that these sums were marital property because they were earned during the marriage and they should have been divided equally between the parties. She cites other cases involving "missing" funds not adequately accounted for in the evidence. However, she does not address the trial court's finding that defendant's average cash *Page 17 
spending of roughly $33,000 per year is consistent with his practice during the marriage, before the divorce litigation began.
 {¶ 30} Upon our review of the evidence, we find that the court's finding that defendant did not engage in financial misconduct was supported by competent, credible evidence. Accordingly, plaintiff's first cross-assignment of error is overruled.
 {¶ 31} In support of her second cross-assignment of error, plaintiff argues that the trial court erred in failing to include in the division of marital property the attorney and expert witness fees that defendant paid during the pendency of the litigation. She cites Ayer v. Ayer (June 30, 2000), Hamilton App. No. C-990712, in which the appellate court found no abuse of discretion in the trial court's fashioning of an award of attorney fees by adding together the sums that each party had spent on attorney fees, then dividing the sum in half, and awarding to the party who had spent less, the difference between what she had spent and the quotient obtained by dividing the fee total in half.
 {¶ 32} Ayer is inapplicable here for several reasons. First, that case involved a review of an attorney fee award, not a court's division of marital property. The Ayer court's attorney fee award involved a consideration of "whether either party [would] be prevented from fully litigating his rights and adequately protecting his interest if [the court did] not award reasonable attorney fees" pursuant to former R.C. 3105.18(H). That was not the inquiry in this case.
 {¶ 33} Here, the trial court noted that plaintiff never sought temporary orders for payment of attorney fees, and the marital assets were available to both parties for payment of their respective attorney and expert fees during the pendency of the litigation. Plaintiff simply failed to pay all of her bills during the pendency of the proceedings, while *Page 18 
defendant did pay his, and paid over $20,000 toward plaintiff's litigation expenses in January 2007. The court's findings were supported by the evidence and its decision on this issue was not an abuse of discretion. For these reasons, plaintiff's second cross-assignment of error is overruled.
 {¶ 34} Finally, plaintiff's third cross-assignment of error challenges the trial court's spousal support award insofar as it did not require a regular accounting from defendant as to the amount he receives as distributions from HS, to ensure that plaintiff will be aware of the precise amounts to which she will be entitled under the court's 20 percent formula. Our disposition of defendant's first assignment of error renders this assignment of error moot. Accordingly, we overrule plaintiff's third cross-assignment of error on that basis.
 {¶ 35} In summary, we sustain defendant's first assignment of error and overrule as moot defendant's second assignment of error. Further, we overrule plaintiff's first and second cross-assignments of error, and we overrule her third cross-assignment of error as moot. We affirm in part and reverse in part the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, and we remand this matter to that court for further proceedings consistent with law and with this opinion.
Judgment affirmed in part and reversed in part; cause remanded.
KLATT and FRENCH, JJ., concur.
[1] See
http://massbar.org/for-attorneys/publications/section-review/2006/v8-n3/the-double-dipping-concept-in-business-valuation-for-divorce-purposes (last visited June 25, 2008).
[2] 5 Law Valuation, Financial Valuation in Legal Contexts, section 5.2.1, found athttp://www.wfu.edu/palmitar/LawValuation/chapter%205/5-2-1.htm
(last visited June 25, 2008).
[3] Hawkins, The Income Valuation Approach (The Basics for Attorneysand Judges), found athttp://www.businessvalue.com/Income%20Approach%20(FV,%207-05).pdf (last visited June 25, 2008). *Page 1