HELLER, Appellee,

v.

HELLER, Appellant.

[Cite as *Heller v. Heller*, 195 Ohio App.3d 541, 2011-Ohio-5364.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 11AP–66.

Decided Oct. 18, 2011.

Robert C. Hetterscheidt, for appellee.

Mowery, Youell & Galeano, Ltd., James S. Mowery Jr., and Nicholas W. Yaeger, for appellant.

---

BRYANT, Presiding Judge.

{¶ 1} Defendant-appellant, John A. Heller, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, granting a divorce to him and plaintiff-appellee, Susan M. Heller, and awarding her spousal support in the amount of $18,000 per month, plus the cost of health-insurance coverage.  Because the trial court either erred in awarding spousal support contrary to the prior appellate decisions in this case, or abused its discretion in the amount of spousal support awarded, we reverse.

## I. Facts and Procedural History

{¶ 2} Plaintiff and defendant were married on June 29, 1974. On September 27, 2004, plaintiff initiated this action for divorce; defendant responded with a counterclaim for divorce on October 28, 2004. Two children, born as issue of the marriage, were emancipated at the time the divorce proceedings were begun.

{¶ 3} Defendant holds a 39.5 percent interest in a Subchapter S corporation, H & S Forest Products, Inc., works for the corporation, and draws a salary from it. *Heller v. Heller*, 10th Dist. No. 07AP–871, 2008-Ohio-3296, 2008 WL 2588064, ¶ 2 (*"Heller I"*). Among the issues presented in the divorce proceedings were the value of defendant's interest in H & S, the manner of distributing defendant's interest, a marital asset, between the parties, and the amount of spousal support. *Heller I* at ¶ 3.

{¶ 4} At trial, each party presented an expert to testify regarding the value of defendant's ownership interest in H & S. Id. at ¶ 10. According to the September 24, 2007 judgment entry/decree of divorce, "Both experts concurred that the capitalization of earnings model was the most appropriate method to determine the fair market value of this particular company." The capitalization-of-earnings method " 'relies on the discounted cash flow (DCF) model' " under which " '[e]arnings projections, extrapolated from the company's accounting statements, are discounted using a capitalization rate (or multiplier) that takes into account the buyer's required risk-based rate of return and a factor for future growth.' " *Heller I* at ¶ 16, quoting 5 Law & Valuation, Financial Valuation in Legal Contexts, section 5.2.1, found at http://www.wfu.edu/palmitar/Law& Valuation/chapter% 205/5–2–1.htm (last visited June 25, 2008).

{¶ 5} Using that method to ascertain H & S's current value, defendant's expert analyzed past earnings data to determine earnings projections. He then added the owners' return on investment, or dividends, to obtain the " 'normalized income,' " which is what a prospective buyer [could] expect as a return on his investment, but left out (or deducted) the amount paid to defendant and the other shareholders that is compensation related to their own day-to-day labor." Id., 2008-Ohio-3296, 2008 WL 2588064, at ¶ 18.

{¶ 6} The expert explained that shareholders' compensation must be deducted "because a potential investor would have to pay these salaries, so they are not counted as part of the 'normalized income' or the return on the buyer's investment." Id. Defendant's expert thus reduced defendant's income to $300,000, with the remaining approximately $700,000 balance of the annual cash flow to defendant being characterized as ownership interest. See Defendant's Exhibit 35, page 17 (reflecting in defendant's expert's report that he deducted defendant's salary to determine the normalized earnings of the business and that "[t]he

deduction was based on the 2006/2007 Executive Compensation Report, published by Compdata Surveys").

{¶ 7} In its September 24, 2007 judgment entry, the trial court adopted the conclusion of defendant's expert that as of December 31, 2005, defendant's interest in H & S was valued at $700,018, and the court awarded all of defendant's shares in H & S to defendant. To achieve an equal division of marital property, the court awarded plaintiff other marital assets valued at $350,000. *Heller I*, 2008-Ohio-3296, 2008 WL 2588064, ¶ 10. The trial court further noted that the only portion of defendant's income that was not the result of defendant's ownership interest in H & S was the $300,000 that the expert had assigned as defendant's annual income. Based on that number, the court determined that an indefinite spousal-support award of $8,000 per month was reasonable and appropriate. As additional spousal support, the court ordered defendant to pay plaintiff the cost of plaintiff's monthly health-insurance coverage, as well as 20 percent of each payment of additional gross, or pre-tax, income H & S paid to defendant, payments that the parties characterized in the trial as "bonus" income. The court retained jurisdiction to modify spousal support both as to term and amount.

{¶ 8} Defendant appealed from the trial court's decree, asserting that the court had impermissibly "double dipped" when it twice distributed his interest in H & S's future profits, once as a marital asset and again as part of an award of spousal support. In addressing the assigned error, *Heller I* stated, "[T]he evidence clearly indicates that the value assigned to defendant's interest in H & S did not include defendant's compensation for his daily labor, but did include his share of all of H & S's future excess earnings." Id., 2008-Ohio-3296, 2008 WL 2588064, at ¶ 22. Noting that R.C. 3105.171(C)(3) and 3105.18(A) required the trial court "to keep marital property division and spousal support separate," *Heller I* stated that "[t]rial courts may treat a spouse's future business profits either as a marital asset subject to division, or as a stream of income for spousal support purposes, but not both." Id. at ¶ 21, 23. *Heller I* accordingly determined that the trial court had improperly "double dipped" and abused its discretion when it both included defendant's interest in the future profits of H & S as a marital asset and also awarded plaintiff 20 percent of those dividends as spousal support, thus "drawing twice from the same well." Id. at ¶ 15, 19.

{¶ 9} Indeed, the trial court so read *Heller I*, as on remand the trial court stated that its "first blush" interpretation upon reading *Heller I* was that "*none* of defendant's income from H & S above the normalized earnings (i.e., above $300,000 in this case) [could] be considered in setting the award of spousal support." In reconsidering the matter, the trial court issued a judgment on March 9, 2010, in which it "decline[d] the opportunity to revisit its property

division in the initial decree." After reviewing articles and case law that discussed the "double dip" issue, the trial court determined that its original spousal-support award complied with the statutory mandates of both R.C. 3105.171 and 3105.18, so the property division and spousal-support award were fair, equitable, and consistent with law.

{¶ 10} Defendant appealed from the trial court's March 9, 2010 judgment, asserting that the trial court erred in failing to implement this court's decision in *Heller I. Heller v. Heller,* 10th Dist. No. 10AP–312, 2010-Ohio-6124, 2010 WL 5141713, ¶ 7 (*"Heller II"*). *Heller II* notes that *Heller I* "instructed the trial court to revise the award so that it did not contain a 'double dip,' and it was incumbent upon the trial court to do so." Id. at ¶ 9. Because the trial court again awarded plaintiff spousal support by means of the "double dip," *Heller II* sustained defendant's assignment of error, reversed the trial court's judgment, and remanded the matter to the trial court. Id. at ¶ 9–10.

{¶ 11} On December 22, 2010, the court issued a judgment in response to *Heller II,* adopting the award of marital property from its prior decisions. The court, however, ordered that "[c]ommencing October 1, 2007, defendant shall pay spousal support to plaintiff in the amount of $18,000 per month as an indefinite award of spousal support." The court retained jurisdiction to modify the award and also stated that as additional spousal support, defendant would pay the cost of plaintiff's health-insurance coverage. At the time of trial, defendant estimated the monthly cost of plaintiff's health insurance to be $783.

## II. Assignments of Error

{¶ 12} Defendant appeals, assigning the following errors:

FIRST ASSIGNMENT OF ERROR

The trial court erred and abused its discretion as a matter of law by failing to abide by the Tenth District Court of Appeal's decisions rendered June 30, 2008 and December 14, 2010 reversing and remanding the trial court's September 24, 2007 and March 9, 2010 decrees of divorce.

SECOND ASSIGNMENT OF ERROR

The trial court abused its discretion by awarding the appellee $18,000 a month in spousal support as it is not reasonable or appropriate and is punitive in nature.

THIRD ASSIGNMENT OF ERROR

The trial court abused its discretion by making its spousal support award retroactive to September 24, 2007 creating arrearages in excess of $400,000.

### III.  First and Second Assignments of Error—Spousal Support

{¶ 13} Defendant's first and second assignments of error assert that the trial court ignored *Heller I* and *Heller II* and, contrary to those opinions, again "double dipped" by dividing defendant's interest in H & S as a marital asset and considering that same stream of income in awarding plaintiff $18,000 per month as spousal support.  Defendant alternatively asserts that the trial court abused its discretion in establishing the amount of spousal support that defendant is to pay plaintiff.

### A.  *"Double Dip"*

{¶ 14} Although the trial court's most recent decision of December 22, 2010, eliminated the portion of its prior spousal-support award that provided plaintiff with 20 percent of defendant's interest in H & S's future profits, it increased the flat monthly amount of spousal support from $8,000 to $18,000.  Defendant asserts not only that the "most recent Decree is merely form over substance" but that the court necessarily considered defendant's ownership interest in H & S in increasing spousal support to $18,000 per month.

{¶ 15} Because the trial court's most recent decision again divided defendant's interest in H & S as a marital asset, the trial court, in order to comply with *Heller I* and *II* and avoid the "double dip," could consider only defendant's annual income of $300,000 in setting the amount of spousal support.  Despite defendant's assertion, nothing in the court's December 22, 2010 decision states that the court considered defendant's bonus income in awarding plaintiff spousal support.  To the contrary, by eliminating the portion of its prior award specifically tied to defendant's bonus income, the court appears to have attempted to comply with our decisions in *Heller I* and *II*.

{¶ 16} Defendant responds that the trial court necessarily considered defendant's interest in H & S's future profits in awarding spousal support of $18,000 per month because the order to pay $216,000 per year in spousal support otherwise clearly constitutes an abuse of discretion.  "When we are presented with alternate interpretations of a tribunal's decision, only one of which delivers internal consistency, we are compelled to construe the decision in a manner that achieves consistency."  *Ohio Dept. of Rehab. & Corr. v. Price*, 10th Dist. No. 10AP–260, 2010-Ohio-5629, 2010 WL 4683571, ¶ 17, citing *Macklin v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 01AP–293, 2002-Ohio-5069, 2002 WL 31122718, ¶ 20 (stating " '[i]f the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment' "), quoting *Estate of Barbieri v. Evans* (1998), 127 Ohio App.3d 207, 211, 711 N.E.2d 1101.

{¶ 17} Although nothing in the trial court's decision indicates what it considered in awarding plaintiff $18,000 per month in spousal support, two alternate interpretations are possible. The first, urged by defendant, requires that we find that the trial court violated the law-of-the-case doctrine by again considering defendant's bonus income from his ownership interest in H & S when it set the amount of spousal support. See *Nolan v. Nolan* (1984), 11 Ohio St.3d 1, 3, 11 OBR 1, 462 N.E.2d 410 (stating that the law-of-the-case doctrine "provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels"). The second interpretation suggests that the trial court followed our prior decisions and did not consider defendant's bonus income. Because the trial court did not indicate what portion of defendant's income it relied upon in setting defendant's spousal-support obligation at $18,000 per month, the trial court's decision arguably is consistent with our decisions in *Heller I* and *II*.

{¶ 18} If the trial court's judgment reflects an attempt to comply with *Heller I* and *II*, then the issue is whether the trial court abused its discretion in awarding spousal support in the amount of $18,000 per month, plus the cost of plaintiff's health insurance, in view of defendant's $300,000 income.

B. *Abuse of Discretion*

{¶ 19} " '[S]pousal support' means any payment or payments to be made to a spouse or former spouse, or to a third party for the benefit of a spouse or a former spouse, that is both for sustenance and for support." R.C. 3105.18(A). A trial court may award "reasonable spousal support to either party" in a divorce proceeding. R.C. 3105.18(B). A trial court has broad discretion to determine the proper amount of spousal support based on the particular facts and circumstances of each case. *Kunkle v. Kunkle* (1990), 51 Ohio St.3d 64, 67, 554 N.E.2d 83. A reviewing court cannot substitute its judgment for that of the trial court absent an abuse of discretion. Id. See *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140 (defining "abuse of discretion").

{¶ 20} R.C. 3105.18(C)(1) governs the trial court's discretion and requires the trial court to consider certain enumerated factors in determining not only whether spousal support is appropriate and reasonable, but also the nature, amount, terms of payment, and duration of such an award. The factors are many, but at issue here is the income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under R.C. 3105.171. R.C. 3105.18(C). The trial court is not required to comment on each statutory factor; rather, the record need show only that the court considered them in making its award. *McClung v. McClung,* 10th Dist. No.

03AP–156, 2004-Ohio-240, 2004 WL 98621, ¶ 21. The trial court analyzed the R.C. 3105.18(C) factors in its original September 24, 2007 judgment entry.

{¶ 21} Significant to the present appeal, the court determined that "defendant's earning capacity solely from employment is $300,000.00 annually, the 'normalized' income assigned by both accountants," meaning defendant's "additional income over and above this earning capacity [is] due to his ownership interest in the company, as reflected in his W–2 income." As important to this appeal is the principle that an award of spousal support must not exceed an amount that is reasonable. *Kunkle*, 51 Ohio St.3d 64, 554 N.E.2d 83, at paragraph three of the syllabus. Although R.C. 3105.18 provides the trial court with broad discretion in establishing spousal support, "this statutory scheme does not allow a court to fine, penalize or reward either party at the time of the divorce decree." *Simoni v. Simoni* (1995), 102 Ohio App.3d 628, 637, 657 N.E.2d 800, appeal not allowed, 73 Ohio St.3d 1453, 654 N.E.2d 989.

{¶ 22} Plaintiff contends that the trial court did not abuse its discretion because the trial court was not restricted to considering only defendant's $300,000 annual income, but pursuant to R.C. 3105.18, was required to consider all sources of income when determining spousal support, so that defendant's income included his base salary from employment of $300,000 and any bonus or shareholder distributions as reflected in defendant's W–2 statements. Contrary to plaintiff's contentions, the trial court, pursuant to *Heller I* and *II*, could not both distribute defendant's ownership interest in H & S as a marital asset and at the same time consider defendant's earnings "bonus" income in determining the amount of spousal support. *Heller I*, 2008-Ohio-3296, 2008 WL 2588064, at ¶ 23.

{¶ 23} The issue, then, reduces to whether defendant's $300,000 income reasonably supports the trial court's order. Under the trial court's most recent spousal-support order, defendant's yearly spousal-support obligation is $225,396, or a monthly obligation of $18,783 composed of the $18,000 award and the monthly healthcare cost of $783. The yearly obligation is 75 percent of defendant's annual income. R.C. 3105.18 does not require a court, in awarding spousal support, to provide the parties with an equal standard of living. *Kaechele v. Kaechele* (1988), 35 Ohio St.3d 93, 95, 518 N.E.2d 1197. Nor does any statute "prevent[ ] a court from ordering a spousal support in an amount that is in excess of 50 percent of a person's earnings." *Zollar v. Zollar*, 12th Dist. No. CA2008–03–065, 2009-Ohio-1008, 2009 WL 580798, ¶ 40, citing *Cramblett v. Cramblett*, 7th Dist. No. 05 HA 581, 2006-Ohio-4615, 2006 WL 2574561, ¶ 23.

{¶ 24} Even so, in *Farnsworth v. Farnsworth*, 9th Dist. No. 02CA0074–M, 2003-Ohio-2341, 2003 WL 21040707, where the wife was capable of developing meaningful employment outside the home, the court found troubling an award of

spousal support, effective until either party died or the wife remarried, that represented 53 percent of the husband's yearly gross income "and, therefore, an even higher percentage of his actual income after taxes." Id. at ¶ 8, 13. See also *Stone v. Stone,* 2d Dist. No. 2003–CA–34, 2004-Ohio-671, 2004 WL 260286, ¶ 32–34 (determining that the trial court abused its discretion in calculating the amount of spousal support when the defendant's court-ordered obligations consumed 86 percent of the defendant's monthly gross income). Cf. *Hamilton v. Hamilton,* 5th Dist. No. 2008 CA 00256, 2009-Ohio-4321, 2009 WL 2602212 (concluding that the trial court did not abuse its discretion in awarding the wife spousal support that amounted to 68 percent of the husband's disposable income, when the wife earned $17,000 per year and lived in the marital home but paid $700 per month towards the mortgage).

{¶ 25} Here, plaintiff agreed with the vocational expert's finding that she was readily employable at a salary range of $20,000 to $22,000, noting specific employment possibilities ranging from $24,000 to $32,780. Assuming that plaintiff were employed making $20,000 per year, she would have income, including her spousal support, of $245,396 annually, while defendant, due to the spousal-support obligation, would have income of $74,604 annually.

{¶ 26} Given those facts, the trial court abused its discretion in awarding plaintiff indefinite spousal support of $18,000 per month plus the cost of health-insurance coverage, or 75 percent of defendant's yearly income. *Hesseling v. Hesseling,* 4th Dist. No. 08CA3034, 2009-Ohio-3116, 2009 WL 1830787, ¶ 25–26, 28 (concluding that spousal-support order was unreasonable when a husband's court-ordered payments, including child support, spousal support and mortgage obligation, consumed 76 percent of the husband's monthly gross, or pre-tax, income). Although the court awarded plaintiff the marital home and certain real estate in Florida, both with mortgages, the properties' values far outweighed the mortgage attached to each property. Moreover, the court awarded plaintiff income-producing assets, including the Florida rental property and 50 percent of the H & S notes receivable.

{¶ 27} As a result, if the trial court's award did not violate *Heller I* and *Heller II,* then the award is an abuse of discretion.

## IV. Disposition

{¶ 28} Typically, under circumstances such as these, we would remand the case to the trial court to allow the court to amend its award and set forth the basis for its decision. See *Zeefe v. Zeefe* (1998), 125 Ohio App.3d 600, 607, 709 N.E.2d 208, quoting *Herman v. Herman* (Mar. 28, 1997), 11th Dist. No. 96–P–0194, 1997 WL 158106, quoting *Schneider v. Schneider* (1989), 61 Ohio App.3d 164, 168, 572 N.E.2d 221 (stating, "[I]t would be improper for this court to

perform the intermediate analytical steps which the trial court neglected to recite[,] [since] ' "[t]he better approach is to remand this case in order that the trial court may comply with the mandates of the *Kaechele* case by setting forth the basis for its decision." ' ")

{¶ 29} This case, however, twice was remanded to the trial court solely on the issue of spousal support. "When the court of appeals determines that the trial court committed error prejudicial to the appellant and that the appellant is entitled to have judgment or final order rendered in his favor as a matter of law," the court of appeals, rather than remanding the case to the trial court, may "reverse the judgment or final order of the trial court and render the judgment or final order that the trial court should have rendered." App.R. 12(B). See *Lewposky v. Lewposky*, 7th Dist. No. 08 CO 10, 2010-Ohio-1544, 2010 WL 1328666, ¶ 54–56 (invoking App.R. 12(B) to modify a spousal-support award when the court twice before remanded the case but the trial court did not follow the court's orders upon remand). Likewise, here, we enter judgment pursuant to App.R. 12(B).

{¶ 30} In its March 9, 2010 judgment, the trial court stated that the purpose of the 20 percent award from defendant's future business income "was to account for the unpredictable nature of defendant's income from the company in excess of his salary," but the "base award of $8,000 monthly plus health insurance was set upon [defendant's] salaried base income, approximately $300,000." Because the basis for the spousal-support award cannot include the bonus income in excess of defendant's salary, we reverse the trial court's December 22, 2010 decision and judgment entry and enter judgment to reflect, consistent with the trial court's base award of March 9, 2010, a monthly spousal-support obligation of $8,000 plus the cost of plaintiff's health-insurance coverage. We remand the matter to the trial court to determine whether any arrearage exists and, if so, to establish a payment schedule to eliminate the arrearage.

{¶ 31} Having sustained defendant's first and second assignments of error, rendering moot his third assignment of error, we reverse the judgment of the trial court, enter judgment of a monthly spousal-support obligation of $8,000 plus the cost of plaintiff's health-insurance coverage, and remand for further proceedings consistent with this decision concerning any arrearage.

> Judgment reversed,
> judgment entered,
> and cause remanded.

KLATT, J., concurs.

TYACK, J., dissents.

TYACK, Judge, dissenting.

{¶ 32} I do not believe that the trial court disregarded our earlier decisions in this case. As a result, I would overrule all the assignments of error.

{¶ 33} I would trust the trial court to follow our mandate again this time. A prior panel of this court decided that the trial court was incorrect to award both the $8,000 per month amount of spousal support and 20 percent of the extra funds John A. Heller has routinely drawn from the Subchapter S corporation. These extra funds have routinely resulted in cash flow that dwarfs his base salary of $300,000. As noted in the majority opinion, in the year of the divorce proceeding, these extra funds totaled approximately $700,000. For that year, as an example, spousal support would have been $96,000 plus $140,000, or $236,000. The $96,000 constituted between 40 and 41 percent of the total order of spousal support and the total award would have been 23.6 percent of the money John received.

{¶ 34} The panel of this appellate court in *Heller v. Heller*, 10th Dist. No. 10AP–312, 2010-Ohio-6124, 2010 WL 5141713 ("*Heller II*"), gave little guidance to the trial court, saying little more than "do what we told you to do" in *Heller v. Heller*, 10th Dist. No. 07AP–871, 2008-Ohio-3296, 2008 WL 2588064 ("*Heller I*").

{¶ 35} The trial judge, affected by the fact that John A. Heller was drawing a profit of approximately $1 million per year from the Subchapter S corporation, awarded 21.67 percent of that amount as spousal support, subject to modification upon a substantial change of circumstances, such as the Subchapter S corporation having a bad financial year. Given the rulings of *Heller I* and *Heller II*, I believe the judge did not abuse his discretion.

{¶ 36} The order of the majority of this panel means that after a very long-term marriage, Susan Heller gets an award of spousal support of less than ten percent of the cash flow John A. Heller received from the corporation the year the divorce case was tried. I simply disagree with the majority decision.

{¶ 37} I personally do not see the trial court's award of spousal support as an abuse of discretion, given the limitations placed upon it by the earlier decisions of this court. I would overrule all three assignments of error. Even if I were to agree as to the third assignment of error, I would not enter judgment for a spousal support order of approximately ten percent of the cash flow received by the husband after a long-term marriage.

{¶ 38} Again, I would overrule all assignments of error and affirm the judgment of the trial court.