**[Cite as *Corwin v. Corwin*, 2013-Ohio-3996.]**

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


| | | |
|---|---|---|
| BRETT E. CORWIN, | : | |
| | | CASE NOS. CA2013-01-005 |
| Plaintiff-Appellee, | : | CA2013-02-012 |
| | : | O P I N I O N |
| - vs - | | 9/16/2013 |
| | : | |
| JULIE A. CORWIN, | : | |
| Defendant-Appellant. | : | |


APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 11DR34432


Andrea N. Hicks, 224 Reading Road, Mason, Ohio 45040, for plaintiff-appellee

David N. McNamee, 42 Woodcroft Trail, Suite D, Beavercreek, Ohio 45430, for defendant-appellant


**M. POWELL, J.**

{¶ 1} Defendant-appellant, Julie A. Corwin (Wife), and plaintiff-appellee, Brett E. Corwin (Husband), each appeal a decision of the Warren County Common Pleas Court, Domestic Relations Division, in their divorce, determining the value of Husband's businesses, and establishing spousal support and child support. For the reasons discussed below, we affirm in part, reverse in part, and remand the cause to the trial court for further proceedings.

{¶ 2} Husband and Wife were married August 26, 1995. Two children were born as issue of their marriage: Devin, born February 22, 2000, and Morgan, born November 8, 2001. Husband and Wife separated on November 26, 2008 and have lived apart since that date. The parties initially filed for divorce in 2010 but voluntarily dismissed that proceeding (the "2010 Divorce Case"). On February 24, 2011, Husband re-filed for divorce. Wife answered and counterclaimed for divorce. Husband and Wife agree that the end date of the marriage is December 31, 2009 and that the duration of the marriage was 14 years.

{¶ 3} A final contested hearing was held before a magistrate on December 12, 2011, February 23, 2012, and March 5, 2012. Contested issues presented to the court concerned (1) the division of marital assets, (2) the incomes of the parties, (3) spousal support, (4) child support, and (5) parenting time.

{¶ 4} A main focus of the divorce was the valuation of Husband's income and one-third ownership interest in Brink Corwin & Nicholson, LLC, Brink Corwin & Nicholson II, Ltd, and BCN Dayton LLC (collectively, "BCN"). BCN operates three "Bargos Grill and Tap" bars in Springdale, Dayton, and Centerville, Ohio. There was no dispute that BCN was marital property. In determining the value of Husband's interest in BCN, and his income, each party presented valuation experts.[1]

{¶ 5} Husband presented appraiser Brian Russell. Russell testified that he performed a valuation of BCN using tax returns from the companies for the years 2006 through 2010 including an "adjustment" made for "vending machine income at a rate of $30,000" per year that had not been reported on the tax returns.[2] Russell explained that

---

1. The parties stipulated that both witnesses were qualified experts.

2. The vending machine income stemmed from pool tables, jukeboxes, dart boards, and touchscreen games located inside the three bars.

"what you're doing when you're doing a business valuation and you're looking at the five-year or whatever historical period range is, is to really do an analysis to give yourself the best estimate and assumption as to what you believe the company's normalized earnings or net income will be in the future years."

{¶ 6} Russell opined that BCN had a marketable value of $368,739 with Husband's one-third interest valued at $82,816 as of 2009. However, Russell acknowledged on redirect examination that he had made an error in his valuation report when he failed to "add back the amortization expense." Additionally, Russell testified that he learned that the $30,000 vending machine income not reported by BCN was, in actuality, closer to $34,000. Therefore, Russell revised his valuation report and found that Husband's ownership interest in BCN was $96,135 for 2009. Finally, Russell concluded that Husband's yearly income was between $35,000 and $37,000.

{¶ 7} Wife presented appraiser Alan C. Duval. Duval stated that in preparing his valuation of BCN, he initially looked at the owners' individual tax returns as well as BCN's tax returns. After finding some "anomalies," Duval determined that BCN had likely filed fraudulent tax returns by failing to report approximately $700,000 in receipts. Therefore, he reviewed not only the tax returns but also a series of other records including bank statements, financing statements, and a 2004 Buy/Sell Agreement to determine the value of BCN.

{¶ 8} Initially, Duval testified that, in 2009, BCN had a value of $1,232,000 with Husband's one-third ownership interest valued at $340,000. Duval further stated that Husband's annual income is approximately $120,000. In making this determination, Duval factored in an "auto expense" from BCN that he assumed was Husband's, amortization expenses, and "inter-account transfers" such as payroll, ATM, and sales tax. Duval validated his opinion through the 2004 Buy/Sell Agreement between the members of BCN, who valued

one of the BCN bars at $500,000.[3]

{¶ 9} However, in his second day of testimony, and after reviewing additional documentation he received from BCN, Duval found that Husband's one-third interest in BCN had a 2009 value of only $219,000. Duval stated that his valuation did decrease, but explained that his valuation was still higher than Russell's—even though they used the same capitalization of earnings method—because Duval used "cushion factors" to determine "additional unreported income" he believed BCN had not reported on its taxes.

{¶ 10} Husband testified concerning the "anomalies" found by Duval. Husband stated that, after receiving Duval's report indicating that BCN had underreported approximately $700,000, he contacted his accountant and Russell and found that there were several exclusions that Duval did not factor in to his valuation report. Specifically, Husband stated that Duval did not exclude sales tax or bank account withdrawals to load the ATM machines located at the three bars. Duval also did not exclude funds withdrawn by the state of Ohio for BCN's KENO account. Husband explained that Duval should not have included the payroll account in his report because this account only contained "intra-company transfers" from one bank account to another in order to pay employees. Husband further testified that, though his yearly income was approximately $100,000 in 2007, BCN had not performed well in the last few years and he now has a yearly income of approximately $50,000.

{¶ 11} Husband also addressed the parties' shared parenting plan, stating that, since early 2010, he received visitation with the children overnight on Wednesdays, every other weekend and overnight on the alternating Mondays ("Monday visitations") when he does not have weekend visitation. Husband seeks continuance of his Monday visitations so that he would not have to go an entire week without seeing his children.

---

3. Russell, on the other hand, testified that the Buy/Sell Agreement added "very little" to any opinion because the partners had no basis at arriving at an initial value of $500,000.

{¶ 12} Wife testified regarding her current income and her desire to have Husband's Monday visitations with the children cease. As to her income, Wife testified that, prior to 2005, she worked on a full-time basis making approximately $23,000 per year. However, she left the workforce in 2005 to care for the children. Two years after the couple separated, Wife began working part time at a company called Ranstad, making $13 per hour and working an average of 23 hours per week. Wife claimed that her ability to work is "restricted" due to the fact that she is a mother. Specifically, Wife clarified that it would be very difficult for her to work full time due to her children, not wanting to work weekends and nights, and her lack of a college degree.

{¶ 13} Regarding Husband's parenting time, Wife testified that she did not wish for the Monday visitations with Husband and the children to continue. She believed these visits were "confusing" for the children and caused a "commotion" due to the excessive travel between school and their parents' residences. Wife expressed that it would be in the children's "best interest" if Husband had parenting time only on Wednesdays and every other weekend.

{¶ 14} The magistrate rendered his decision on July 31, 2012. The magistrate found Russell's valuation, "accompanied by Husbands [sic] statements regarding revenues and deposits generated by companies," to be a more accurate estimate of Husband's ownership interest of BCN. Thus, the magistrate concluded that Husband's ownership interest had a value of $96,135. Consequently, Husband owed Wife $48,067.50 as her half of Husband's ownership interest in BCN. The magistrate further determined, based upon his own calculations, that Husband's annual income was $74,504. The magistrate further found that Monday visitations were in the best interests of the children and that Wife would receive spousal support in the amount of $1,380 per month for 43 months effective July 1, 2012, and child support in the amount of $303.80 per month.

{¶ 15} Both parties filed objections to the magistrate's decision. Wife objected to the value placed upon Husband's business, the income determinations for Husband and Wife, and the effects the various determinations had on spousal support and child support. Husband objected to the magistrate's calculation of his income and the effective date of spousal support. The trial court overruled, in part, and sustained, in part, the objections on November 14, 2012.

{¶ 16} In its decision on the objections to the magistrate's decision, the trial court found that (1) Russell's valuation of Husband's interest in BCN was "more accurate," (2) Husband's annual income is $74,504, and (3) Husband should pay Wife $1,380 per month in spousal support and $303.80 per month in child support. However, the trial court found that the parties previously stipulated in the 2010 Divorce Case that any spousal support payments awarded would be retroactive to December 2008. Thus, the trial court found that Husband's monthly support payments for 43 months shall be considered retroactive to December 2008 and Husband shall receive credit for any past payments made to Wife.

{¶ 17} On January 10, 2013, the trial court filed its Final Judgment and Decree of Divorce, granting the parties a divorce. Wife timely appeals the trial court's decision, raising seven assignments of error:

{¶ 18} Assignment of Error No. 1:

{¶ 19} THE [TRIAL] COURT'S DETERMINATION OF THE VALUE OF BCN WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND AN ABUSE OF THE [TRIAL] COURT'S DISCRETION.

{¶ 20} Assignment of Error No. 2:

{¶ 21} THE [TRIAL] COURT'S DETERMINATION OF [WIFE'S] INCOME WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND AN ABUSE OF THE [TRIAL]

COURT'S DISCRETION.

{¶ 22} Assignment of Error No. 3:

{¶ 23} THE [TRIAL] COURT'S DETERMINATION OF [HUSBAND'S] INCOME WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND AN ABUSE OF THE [TRIAL] COURT'S DISCRETION.

{¶ 24} Assignment of Error No. 4:

{¶ 25} THE [TRIAL] COURT'S AWARD OF SPOUSAL SUPPORT WAS INADEQUATE, AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, AND AN ABUSE OF THE [TRIAL] COURT'S DISCRETION.

{¶ 26} Assignment of Error No. 5:

{¶ 27} THE [TRIAL] COURT'S ORDER OF PARENTING TIME IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND AN ABUSE OF THE [TRIAL] COURT'S DISCRETION.

{¶ 28} Assignment of Error No. 6:

{¶ 29} THE [TRIAL] COURT'S AWARD OF CHILD SUPPORT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND AN ABUSE OF THE [TRIAL] COURT'S DISCRETION.

{¶ 30} Assignment of Error No. 7:

{¶ 31} THE [TRIAL] COURT'S AWARD OF THE TAX EXEMPTIONS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND AN ABUSE OF THE [TRIAL] COURT'S DISCRETION.

{¶ 32} Husband cross-appeals, presenting one assignment of error for review:

{¶ 33} Cross-assignment of Error No. 1:

{¶ 34} THE TRIAL COURT ERRED IN DETERMINING [HUSBAND'S] INCOME THUS

AFFECTING SUPPORT ORDERS.

{¶ 35} For ease of discussion, the assignments of error shall be addressed out of turn. We begin our review by addressing the parties' contentions regarding the division of marital property and spousal support, looking specifically to the value of Husband's interest in BCN and Husband's annual income.

## Division of Marital Property and Spousal Support

{¶ 36} In her first, third, and fourth assignments of error, Wife argues the trial court erred in its distribution of marital property and award of spousal support based upon (1) an undervaluation of BCN, (2) an undervaluation of Husband's income, and (3) an improper "start date" of spousal support. In his sole assignment of error, Husband contends the trial court impermissibly "double-dipped" in disbursing to Wife a portion of Husband's ownership interest in BCN as marital property and awarding Wife spousal support based upon Husband's income, which included his share of the excess earnings of BCN.

## 1. Valuation of BCN

{¶ 37} In her first assignment of error, Wife contends the trial court's determination relating to the value of BCN was against the manifest weight of the evidence and an abuse of discretion, thereby affecting the distribution of marital property as well as the spousal support award.

{¶ 38} R.C. 3105.171 governs the equitable division of marital property in an action for divorce. In dividing marital property, a trial court shall "divide the marital property equally, unless the court finds an equal division would be inequitable." *Grow v. Grow*, 12th Dist. Butler Nos. CA2010-08-209, CA2010-08-218, and CA2010-11-301, 2012-Ohio-1680, ¶ 12, citing R.C. 3105.171(C)(1).

{¶ 39} "In making these findings, the trial court must assign a value to all of the marital

property." *Id.* at ¶ 12, citing R.C. 3105.171(B); *O'Rourke v. O'Rourke*, 4th Dist. Scioto No. 08CA3253, 2010-Ohio-1243, ¶ 16. "Indeed, a trial court must place a monetary value on every contested asset of the parties in a divorce proceeding." *O'Rourke* at ¶ 16. "In any order for the division or disbursement of property or a distributive award made pursuant to [R.C. 3105.171], the court shall make written findings of fact that support the determination that the marital property has been equitably divided[.]" R.C. 3105.171(G). Specifically, "the trial court must make findings 'in sufficient detail to allow for meaningful appellate review of its decision.'" *O'Rourke* at ¶ 16.

{¶ 40} Because the valuation of a specific asset in a divorce case is a question of fact, we review the issue under a manifest weight of the evidence standard. *See O'Rourke* at ¶ 17, citing *Covert v. Covert*, 4th Dist. Adams No. 03CA778, 2004-Ohio-3534, ¶ 6. An appellate court will not reverse the trial court's valuation "if it is supported by competent and credible evidence." *Grow* at ¶ 11. "In determining whether competent and credible evidence exists, '[a] reviewing court should be guided by a presumption that the findings of a trial court are correct, since the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of their testimony." *Id.*, citing *Bey v. Bey*, 3d Dist. Mercer No. 10-08-12, 2009-Ohio-300, ¶ 15.

{¶ 41} The trial court found Russell's valuation of BCN was "more accurate" than Duval's. Thus, the trial court valued Husband's ownership interest in BCN at $96,135 and disbursed one-half ($48,067.50) to Wife as marital property. In making this determination, the trial court discounted Duval's opinion because it included inter-company transfers resulting in an overestimate of Husband's interest. Furthermore, the trial court adopted the decision of the magistrate, which laid out the conclusions of both experts and found that "Russell's testimony, accompanied by Husbands [sic] statements regarding revenues and

deposits generated by companies, to be a more accurate estimate of Husband's interest of $96,135.00."

{¶ 42} Based upon our review of the record in this case, we find that competent, credible evidence existed from which to conclude that Russell's opinion was a "more accurate" valuation of Husband's interest in BCN than Duval's. Without explanation as to why, Duval's valuation included amortization expenses, auto expenses, unreported sales, and inter-account transfers, including payroll, ATM, sales tax, and other inter-company transfers. Furthermore, Duval relied upon the outdated 2004 Buy/Sell Agreement, which was no longer valid, as the agreement, itself, required a valuation of BCN by appraisal after the first year of the company's existence. Finally, Duval continuously stated that he provided a "cushion" in his calculations to make sure that he was not overstating the value of BCN but could not easily identify exactly what the "cushion" was. Thus, the trial court's decision finding Russell's testimony more credible was not against the manifest weight of the evidence.

{¶ 43} Accordingly, Wife's first assignment of error is overruled.

## 2. Double-Dipping

{¶ 44} For ease of discussion, we now address Husband's contention that the trial court "double-dipped" into Husband's assets by providing Wife a disbursement of marital property based upon Husband's ownership interest in BCN and also a spousal support award based upon the excess earnings component of his income derived from BCN. Specifically, in his sole cross-assignment of error, Husband claims that the trial court "ignored" the expert testimony stating that Husband's tax returns included amounts distributed from the profits of the business as well as actual income.

{¶ 45} The parties' experts valued Husband's interest in BCN pursuant to the "capitalization of earnings" method. As heretofore discussed, the trial court accepted

Husband's expert's opinion and valued Husband's ownership interest in BCN at $96,135. Thus, the trial court found that Wife was entitled to $48,067.50 as her marital interest in BCN.

{¶ 46} With respect to spousal support, the trial court reviewed the opinions of both experts regarding Husband's annual income. Duval testified that he believed Husband's income was approximately $120,000 per year. Russell expressed the opinion that Husband had annual income of approximately $37,000 per year. The trial court found that Duval's opinion was an overstatement of Husband's annual income and Russell's was an understatement. Consequently, the trial court adopted the magistrate's calculation of Husband's income, wherein the magistrate averaged "Husband's ordinary business income as shown on Schedule K-1 Form 1065" by adding to it "1/3 of the depreciation shown on Line 16C of Form 1065" for the years 2009 and 2010. The magistrate concluded that Husband's annual income was approximately $74,504, including Husband's $10,000 share of the unreported vending machine receipts.

{¶ 47} In adopting the magistrate's $74,504 figure, the trial court pointed out that this number was substantially in line with Husband's financial affidavits which included annual incomes of $61,000 for 2009 and $60,000 for 2010.[4] Additionally, the trial court noted that Husband testified at the divorce hearing that his 2010 income was $52,227. Thus, the trial court concluded that, based in part upon Husband's $74,504 annual income, Husband should pay Wife the amount of $1,380 in spousal support for 43 months.

{¶ 48} Husband argues that the trial court abused its discretion by creating a "hypothetical number" for Husband's income based upon profits and depreciation which had already been taken into account by the parties' experts, thus resulting in "double-dipping" in the profit of BCN. Specifically, Husband claims that the trial court violated R.C. 3105.171

---

4. These figures did not include Husband's $10,000 share of the unreported vending machine receipts.

and R.C. 3105.18(A) by failing to keep marital property division and spousal support separate. *See* R.C. 3105.171(C)(3) (the "court shall provide for an equitable division of marital property under this section *prior* to making an award of spousal support to either spouse * * * *and without regard to any spousal support awarded*"); R.C. 3105.18(B) ("In divorce and legal separation proceedings, upon the request of either party and *after the court determines the division or disbursement of property under [R.C. 3105.171]*, the court of common pleas may award reasonable spousal support to either party"). In other words, Husband argues that the trial court abused its discretion in basing spousal support on Husband's income, inclusive of his share of BCN's future profits, when those profits had already been accounted for in valuing a marital asset (Husband's interest in BCN) and had already been equally divided between the parties. Essentially, Husband "posits that once the future profits have been divided pursuant to R.C. 3105.171, one party's share cannot then be treated as 'income' for purposes of awarding spousal support." *See Heller*, 2008-Ohio-3296 at ¶ 12.

{¶ 49} As provided by the Tenth Appellate District in *Heller v. Heller*:

> It is basic valuation theory that the value of a business is equal to the present worth of the *future* benefits of ownership. The "income method" or "capitalization of earnings method" is the most widely used method to compute the value of a business. This method relies on the discounted cash flow (DCF) model. Earnings projections, extrapolated from the company's accounting statements, are discounts using a capitalization rate (or multiplier) that takes into account the buyer's required risk-based rate of return and a factor for future growth. The concept of the time value of money is at the core of the income valuation approach. Namely, the income streams or cash flows the buyer of the business anticipates he or she will receive in the future can be translated into their present worth.

(Internal quotations omitted). *Id.* at ¶ 16, quoting Rivers, *The "double-dipping" concept in business valuation for divorce purposes* (2006), Massachusetts Bar Assoc.

**{¶ 50}** The "double-dipping" referred to by Husband is the "double counting of a marital asset, once in the property division and again in the spousal support award." (Internal quotations omitted.) *Id.* at ¶ 20. "More specifically, where a court uses a business owner's 'excess earnings' to value the interest in the business and also fixes support on that spouse's total income (inclusive of the 'excess earnings' used to value the business), a 'double-dip' occurs." *Id.* "Utilizing the same stream of income that forms the basis of valuing a business when calculating spousal support provides the non-owning spouse with the benefit from the same stream of income twice." (Internal quotations omitted.) *Id.*

**{¶ 51}** R.C. 3105.171(C)(3) requires that the court provide for an equitable division of marital property "prior to making any award of spousal support * * * and without regard to any spousal support so awarded." Additionally, R.C. 3105.18(A) provides that "'[s]pousal support' does not include any payment made to a spouse * * * that is made as part of a division or distribution of property * * * under [R.C.] 3105.171." Based upon these provisions, we follow the Tenth District's determination in *Heller* and find:

> a statutory mandate to keep marital property division and spousal support separate, and to consider the potential 'double-dip' when ruling upon these issues in cases where one spouse's ownership interest in a going concern is discounted to present value and divided, and where excess earnings arising from that ownership interest will constitute part of that spouse's stream of income into the future.

*Heller* at ¶ 21.

**{¶ 52}** In this case, Wife received a one-half interest in Husband's ownership interest in BCN. Wife was then provided an additional $1,380 per month in spousal support for 43 months based, in part, upon Husband's income. However, as explained by Russell during the divorce hearing:

> [W]e are counting net profits of the company that have already been used under a Capitalization of Earnings Method to determine the value of the company. So a very large component

- 13 -

of [Husband's] income has already been taken into consideration in the valuation of the company that would be part of the property division itself. To again add that income back in and consider it as part of [Husband's] income for support purposes is double counting.

{¶ 53} From our review of the record in this case, neither the magistrate nor the trial court stated which factors under R.C. 3105.18(C)(1) were relied upon in awarding spousal support. At the very least, both Husband's ownership interest in BCN of $96,135 and the determination that Husband earns $74,504 annually include the same $10,000 of unreported vending machine receipts. Russell stated that his $96,135 figure incorporated Husband's one-third share of the approximately $34,000 in vending machine receipts while, at the same time, the magistrate found Husband's income to be $64,504 plus an additional $10,000 for his share in the unreported vending machine receipts. It is equally apparent that the trial court based its spousal support award upon Husband's income of $74,504, as the entry on the objections to the magistrate's decision specifically overruled the objection to spousal support solely upon the basis that it had also overruled the objection relating to the determination of Husband's income.

{¶ 54} Thus, it is clear from our review that a "double dipping" had occurred in this case at least in regard to the vending machine receipts.

{¶ 55} When the trial court treated Husband's share of BCN's expected future profits as both a marital asset subject to division and as income for spousal support purposes, the trial court abused its discretion. *See Heller* at ¶ 23. Consequently, we reverse the spousal support award of the trial court and remand this matter to the court for further proceedings. Upon remand, the trial court shall determine an appropriate spousal support award based upon a "non-double-dipped" income for Husband and the other applicable factors set forth in R.C. 3105.18(C)(1) based upon the record developed herein or upon such additional

evidence as the trial court determines appropriate.[5]

{¶ 56} Accordingly, Husband's cross-assignment of error is sustained.

### 3. Determination of Husband's Income

{¶ 57} Wife's third assignment of error asserts that the trial court erred in its calculation of Husband's income. Just as in her first assignment of error, Wife essentially argues that the trial court abused its discretion by not relying on the testimony of Duval and that such a determination was against the manifest weight of the evidence and adversely affected the award of spousal support.

{¶ 58} Pursuant to R.C. 3105.18(B), after providing for an equitable division of marital property, a trial court may then determine whether to award spousal support and the amount and duration of such an award. R.C. 3105.18(C)(1) provides that, in "determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider a number of factors including the "income of the parties." R.C. 3105.18(C)(1)(a). Just as in the distribution of marital property, "[a]ppellate review of an award of spousal support is whether the trial court abused its discretion." *Heller* at ¶ 9; *Huynh v. Le*, 12th Dist. Butler No. CA2012-09-190, 2013-Ohio-2859, ¶ 11.

{¶ 59} As described above, the trial court found that Husband's and Wife's experts' opinions on Husband's income were either overestimated or underestimated. Therefore, as discussed above, the trial court adopted the magistrate's income calculation and found Husband's annual income to be $74,504.

---

5. This discussion concerning the "double-dip" effect of including Husband's share of the excess earnings of BCN in his income for purposes of calculating spousal support has no application to the determination of Husband's income for child support calculation purposes. First, the broad definition of "Gross income" set forth in R.C. 3119.01(A)(7) includes excess earnings from an interest in a business. Second, the child for whom child support is paid is not the distributee of marital property consisting of a business valued pursuant to an income capitalization method and, therefore, the child receives no "double-dip."

**{¶ 60}** Based upon a thorough review of the record, we find that the trial court did not abuse its discretion in determining Husband's annual income to be $74,504 based upon a review of his K-1 tax forms, financial affidavits, and testimony. Wife provides no basis for why her expert should have been relied upon over the determinations of the magistrate.

**{¶ 61}** Our opinion that the trial court did not err in finding Husband's annual income to be $74,504 is not in contradiction with our determination that the trial court impermissibly provided Wife with a "double-dip" for purposes of calculating spousal support. A finding that the trial court must reevaluate its spousal support award to prevent a "double-dip" into Husband's profits does not equate to a finding that Husband's income was incorrectly determined for other purposes (i.e., child support). Accordingly, Wife's third assignment of error is overruled.

### 4. Spousal Support Award and its Effective Date

**{¶ 62}** In her fourth assignment of error, Wife contends the trial court's spousal support award was inadequate based upon her claim that the trial court incorrectly determined the parties' incomes. Wife further alleges the trial court erred in ruling that the "start date" for the spousal support award would be December 2008 rather than July 2012.

**{¶ 63}** Wife initially argues the trial court erred by imputing to her annual income of $20,800. The decision to impute income for purposes of spousal support is within the discretion of the trial court and shall not be overruled absent an abuse of discretion. *Havanec v. Havanec*, 10th Dist. Franklin No. 08AP-465, 2008-Ohio-6966, ¶ 23, citing *Nichols v. Nichols*, 9th Dist. Summit No. 19308, 1999 WL 1293350 (Dec. 29, 1999); *Petrusch v. Petrusch*, 2d Dist. Montgomery No. 15960, 1997 WL 102014 (Mar. 7, 1997).

**{¶ 64}** "Although R.C. 3119.01(C)(11) permits a trial court to impute income to a parent who is voluntarily unemployed or voluntarily underemployed for the purpose of

determining the parent's child support obligation, the statutory section on spousal support is less explicit on the issue." *Justice v. Justice*, 12th Dist. Warren No. CA2006-11-134, 2007-Ohio-5186, ¶ 17. "However, this court and others have approved a trial court's imputation of income for purposes of determining spousal support." *Id.*, citing *Moore v. Moore*, 12th Dist. Clermont No. CA2006-09-066, 2007-Ohio-4355, ¶ 64-65; *Rotte v. Rotte*, 12th Dist. Butler No. CA2004-10-249, 2005-Ohio-6269; *Seaburn v. Seaburn*, 5th Dist. Stark No. 2004CA00343, 2005-Ohio-4722, ¶ 32.

{¶ 65} In making its decision to impute income upon Wife, the trial court found that Wife (1) had previously been employed full time at a rate of $10 per hour, (2) was only 37 years old at the time of the divorce hearing, and (3) had no medical conditions that would prevent her from working full time. Furthermore, Wife's only stated reasons for not being able to work full time is that she does not wish to work nights and weekends due to her children and she does not believe there is employment available for her that would accommodate her needs and pay her more than "$6.00 an hour." Yet, Wife admitted that she has not sought full-time employment since before 2005.

{¶ 66} Based upon our review of the record, we find that the trial court did not err in imputing income to Wife in making its spousal support award. Nevertheless, the issue of the amount of spousal support awarded to Wife is remanded as set forth in our ruling upon Husband's assignment of error on cross-appeal. However, this remand does not include a reconsideration of Wife's income as determined by the trial court and affirmed herein.

{¶ 67} Thus, we turn our attention to Wife's remaining argument that the "start date" of the spousal support award was made in error. In its entry overruling Wife's objections to the magistrate's decision, the trial court found that Wife and Husband had previously stipulated in an Agreed Entry filed January 11, 2011 that Husband "shall receive credit in the new divorce case for all temporary child and spousal support payments made since December 2008."

The trial court interpreted this entry to mean that any award of spousal support would be back-dated to begin December 1, 2008. Thus, the trial court ruled that Wife was entitled to spousal support at $1,380 per month beginning December 2008 and lasting for 43 months.

{¶ 68} Wife contends the trial court's interpretation of the agreed entry is incorrect. Instead, Wife claims the agreed entry should be read to mean that the temporary spousal support order established in 2011 should merely be a factor in determining the spousal support obligation and duration. Wife provides no authority, in law or logic, supporting her reading of the agreed entry and we can find none. We therefore conclude that the trial court was in the best position to determine the intent of the parties and, therefore, did not abuse its discretion in interpreting the agreed entry to mean that any spousal support payments would date back to December 2008.

{¶ 69} Accordingly, Wife's fourth assignment of error is overruled.

## Child Support and Parenting Time

{¶ 70} We next turn to Wife's assignments of error relating to child support and parenting time. Wife first argues the trial court's award of child support was made in error due to the trial court's imputation of income to Wife. Next, Wife claims the trial court erred in finding that it is in the best interest of the children for Husband to have overnight visitation with the children on alternating Mondays. Wife additionally argues that the trial court's award of child support was against the manifest weight of the evidence and an abuse of discretion.

## 1. Wife's Income

{¶ 71} In her second assignment of error, Wife again avers that the trial court improperly imputed annual income of $20,800 to her in making its child support determination. Wife claims that such a determination was an abuse of discretion, as the trial court did not expressly find that Wife was "voluntarily underemployed" pursuant to R.C.

3119.01 and there was a lack of evidence that full-time employment was currently available to Wife.

{¶ 72} R.C. 3119.01 provides that "income," for purposes of determining an appropriate child support order, consists of the sum of the gross income of the parent and any "potential income" of the parent if voluntarily underemployed. *See Combs v. Combs*, 12th Dist. Warren No. CA2001-11-102, 2003-Ohio-198, ¶ 6. "The primary design and purpose of R.C. 3119.01 are to protect and ensure the best interests of children." *Id.*, at ¶ 7, citing *Marker v. Grimm*, 65 Ohio St.3d 139, 141-142 (1992). Thus, "a parent's subjective motivations for being voluntarily unemployed or underemployed play no part in the determination whether potential income is to be imputed to that parent in calculating the child support obligation." *Id.*, citing *Rock v. Cabral*, 67 Ohio St.3d 108. 112 (1993).

{¶ 73} "Whether a parent is 'voluntarily underemployed' within the meaning of R.C. 3119.01 is a matter to be determined by the trial court based upon the facts and circumstances of each case." *Id.* at ¶ 6, citing *Rock* at syllabus. "The trial court's determination on this issue will not be disturbed on appeal absent an abuse of discretion." *Id.* As stated above, an abuse of discretion is more than an error of law or judgment but a determination that the trial court's decision is arbitrary, unreasonable, or unconscionable. *Id.*, citing *Blakemore*, 5 Ohio St.3d at 219.

{¶ 74} R.C. 3119.01(C)(11)(a) sets forth a nonexclusive listing of criteria to be considered by a trial court in determining the amount of income to be imputed to an underemployed parent. The criteria include the age and any special needs of the children subject of the child support order and personal factors, such as the parties' prior employment experience, education, skills, training, health and earning capability. Other factors such as employment availability and local wage rates are also to be considered. *See Combs* at ¶ 12.

**{¶ 75}** Wife claims the trial court erred in imputing additional income to her as she cannot work full time because of the couple's children. At the divorce hearing, Wife explained that her ability to work is "restricted" due to the fact that she is a mother. Specifically, Wife clarified that it would be very difficult for her to work full time due to the care of her children, not wanting to work weekends and nights, and her lack of a college degree.

**{¶ 76}** We find the trial court did not err in implicitly determining that Wife is voluntarily underemployed. Although neither the magistrate nor the trial court explicitly found Wife to be voluntarily underemployed, a review of the record before us contains such a finding. *See Drummer v. Drummer*, 3d Dist. Putnam No. 12-11-10, 2012-Ohio-3064, ¶ 27 (finding that "the absence of an express finding of voluntary unemployment or underemployment is not reversible error where a reviewing court is capable of inferring such a finding from the record").

**{¶ 77}** First, the magistrate's decision, adopted by the trial court, provides that Wife "should earn at least $10.00 per hour." Furthermore, the record contains evidence relevant to many of the factors listed in R.C. 3119.01(C)(11)(a). Wife was a high school graduate but does not hold a college degree. She was employed full time prior to 2005 making $10 per hour for a total of $23,000 per year. After entering the work force again in 2010, Wife is working 22 hours per week at an income of $13 per hour. Wife was 37 years old at the time of the divorce hearing and had no medical conditions that would prevent her from working full time. Based upon the foregoing, the trial court did not abuse its discretion in imputing $20,800 per year to Wife, representing full-time employment at $10 per hour.

**{¶ 78}** Accordingly, Wife's second assignment of error is overruled.

### 2. Parenting Time

**{¶ 79}** In her fifth assignment of error, Wife argues the trial court erred in determining

the Monday visitations with Husband would be in the best interests of the children.

{¶ 80} "In establishing a specific parenting time schedule, a trial court is required to consider the factors set forth in R.C. 3109.051(D)." *Anderson v. Anderson*, 12th Dist. Warren No. CA2009-03-033, 2009-Ohio-5636, ¶ 24. These include, in relevant part, the prior interaction and interrelationship between the parent and children; their geographic proximity and available time; the age, health, and safety of the children; the mental and physical health of all the parties; each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights; the wishes and concerns of the children as expressed to the court; whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being abused or neglected; whether the residential parent has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court; whether the parent has established a residence or is planning to establish a residence outside this state; and any other factor bearing on the best interest of the child. *See* R.C. 3109.051(D)(1)-(16); *Anderson* at ¶ 24. "After considering all of the factors listed in this section, the trial court, in its sound discretion, must determine what parenting time schedule is in the best interest of the child[ren]." *Anderson* at ¶ 24, citing *Braatz v. Braatz*, 85 Ohio St.3d 40, 45 (1999).

{¶ 81} The trial court's basic parenting schedule provides for parenting time on alternating weekends beginning Friday evening and ending Sunday evening with additional visitation each Wednesday. Wife contends it was error for the trial court to additionally allow Husband Monday visitation.

{¶ 82} At the divorce hearing, Wife testified that the alternating Monday overnights were "too confusing" and caused a "commotion" for the children. Specifically, Wife argued that the alternating Monday visitations lead to misplaced folders and school work, as well as "late arrivals picking the children up." In order to have "more structure and more

consistency," Wife sought to eliminate Husband's alternating Monday parenting time.

{¶ 83} However, Wife failed to provide any examples of when Husband was late picking up the children or in what way the children have been affected by the Monday visitation. In fact, on cross-examination, Wife admitted that the children have been spending alternating Mondays with Husband for the last two years and that the children are well-adjusted, have good grades in school, and are generally "good kids." Additionally, Husband testified that the children have become accustomed to Monday visitation over the last two years and that his work schedule allows him to drop the children off and pick the children up from school and from Wife's residence on time.

{¶ 84} From our review of the record, it is apparent that the trial court considered the relevant factors set forth above and found that additional parenting time beyond the standard schedule was in the best interests of the children. We find that the trial court did not abuse its discretion in providing Husband standard parenting time as well as additional overnight parenting time on alternating Mondays.

{¶ 85} Accordingly, Mother's fifth assignment of error is overruled.

### 3. Amount of Child Support Order

{¶ 86} In her sixth assignment of error, Wife argues that the amount of child support ordered was against the manifest weight of evidence and an abuse of discretion based upon the trial court's incorrect calculations of Wife's imputed income, Husband's income, and the value of Husband's share in BCN, as well as the improper award of spousal support and the Monday visitations provided to Husband.[6]

{¶ 87} We previously have determined that the trial court did not err in its calculations of Wife's imputed income or Husband's income, nor did the trial court err in its valuation of

---

6. As noted above in fn. 5, the "double-dip" effect of including Husband's share of the excess earnings of BCN in his income for purposes of calculating spousal support has no application to child support.

BCN, or allowing Husband to have Monday visitations with the children. Consequently, we find that the trial court did not abuse its discretion in ordering Husband pay Wife $303.80 in child support based, in part, upon the original spousal support award. However, as we have determined the trial court must readdress the issue of spousal support on remand, we additionally find that the trial court shall also review the child support order in this case. The trial court shall determine whether a new child support order is necessary, taking into consideration any "[a]nnual court-ordered spousal support paid to any spouse or former spouse" pursuant to Line 10 of the applicable child support calculation worksheet. R.C. 3119.022.

{¶ 88} Accordingly, Wife's sixth assignment of error is overruled.

## Tax Exemption

{¶ 89} Finally, we turn to Wife's last assignment of error, wherein she argues the trial court erred in ordering that Husband shall be entitled to claim the parties' minor children on his taxes. Specifically, Wife states that, because both parties are employed and could benefit from the tax exemption, the trial court's ruling was an abuse of discretion and against the manifest weight of the evidence.

{¶ 90} "An appellate court reviews a trial court's decision allocating tax exemptions for dependents under an abuse of discretion standard." *Rainey v. Rainey*, 12th Dist. Clermont No. CA2010-10-083, 2011-Ohio-4343, ¶ 38.

{¶ 91} R.C. 3119.82 provides:

> Whenever a court issues * * * a court child support order, it shall designate which parent may claim the children who are the subject of the court child support order as dependents for federal income tax purposes * * * . If the parties agree on which parent should claim the children as dependents, the court shall designate that parent as the parent who may claim the children. If the parties do not agree, the court, in its order, may permit the parent who is not the residential parent and legal custodian to claim the children as dependents for federal income tax

purposes only if the court determines that this furthers the best interest of the children * * * . In cases in which the parties do not agree which parent may claim the children as dependents, the court shall consider, in making its determination, any net tax savings, the relative financial circumstances and needs of the parents and children, the amount of time the children spend with each parent, the eligibility of either or both parents for the federal earned income tax credit or other state or federal tax credit, and any other relevant factor concerning the best interest of the children.

{¶ 92} This statute sets forth a preference to allocate the dependency exemption to the residential parent unless an allocation to the nonresidential parent is appropriate based upon tax, financial, and other considerations. In this case, the parties' shared parenting plan provides that both Wife and Husband are the residential parents of the minor children regardless of who has custody of the children at the time. *See Rainey* at ¶ 40.

{¶ 93} Thus, "the trial court must allocate the tax dependency exemption based on the child[ren]'s best interest[s]." *Id.* "This court has previously recognized that the best interest of the child is furthered when the allocation of the exemption produces a net tax savings for the parents." (Internal quotations omitted.) *Id.*, citing *Tuttle v. Tuttle*, 12th Dist. Butler Nos. CA2006-07-176, CA2006-07-177, 2007-Ohio-6743, ¶ 21. "A net tax savings to the parent usually equates to more money being available for the care of the child, and is one of the five factors that a court is required to weigh under R.C. 3119.82." *Id.*

{¶ 94} In this case, the trial court stated that, based upon the evidence before it and the factors of R.C. 3119.82, Husband should be entitled to claim the parties' minor children on his taxes. Several factors support the trial court's decision. Husband earns substantially more income, has a much longer employment history, and has a greater earning ability than Wife. *See Ornelas v. Ornelas*, 12th Dist. Warren No. CA2011-08-094, 2012-Ohio-4106, ¶ 55. Wife has provided no support for her contention that she should be allocated a tax exemption merely because it would benefit her. We find the trial court did not abuse its

discretion by allocating the dependency exemption to Husband.

**{¶ 95}** Accordingly, Wife's seventh and final assignment of error is overruled.

### Conclusion

**{¶ 96}** Husband's sole cross-assignment of error is sustained and the cause is remanded to the trial court for determinations regarding spousal support, relating solely to the issue of "double-dipping," and child support, relating solely to any alteration to the "[a]nnual court-ordered spousal support paid to any spouse or former spouse." R.C. 3119.022. Wife's assignments of error are hereby overruled.

**{¶ 97}** Judgment affirmed in part, and reversed in part, and the cause is remanded for proceedings consistent with this opinion.

S. POWELL, P.J., and PIPER, J., concur.